RECEIVED
FEB 27 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN CARTER

versus

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION NO. 04-2500

JUDGE HICKS
**REFERRED TO:**
MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

**Introduction**

John Carter ("Plaintiff") filed an application for Supplemental Security Income payments based on an allegation that he is disabled due to back pain. Plaintiff has a high school education (GED) and past work experience that includes employment as a carpenter and roustabout. He was 29 years old when ALJ Charles Lindsay issued a written decision that denied the claim.

The Appeals Council denied a request for review, and Plaintiff filed this civil action seeking the limited judicial relief permitted by 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case, so the case was referred to the undersigned pursuant to 28 U.S.C. § 636(c) and the standing order of the district court regarding social security cases.

## Summary of the Evidence

Plaintiff testified that he first injured his back in 2001 when he flipped a car and suffered a compression fracture at L2. He was later incarcerated and re-injured his back in August 2002 when he slipped and fell. Tr. 185. Medical records indicate that the car accident caused a closed fracture of the L2 vertebra and that Plaintiff began wearing a back brace. Tr. 137-42. The later injury in the jail occurred when Plaintiff was working in the kitchen and slipped and fell backwards, landing on a metal cart. Plaintiff initially complained of lower back pain and numbness in his left leg. Tr. 127.

After the 2002 fall, an MRI showed an L2 compression fracture with no nerve compression. Plaintiff was discharged the next day with an orthotic device that was to be worn at all times other than to bathe and while sleeping. Plaintiff was ambulating without difficulty. Tr. 120. Radiological findings issued about two weeks after the fall found that the old 2001 compression fracture of L2 was unchanged since 2001, and there was no new compression fracture. Tr. 119.

Plaintiff was seen in the emergency room on August 31, 2002 after he reported that he fell on his tailbone as he was about to sit in a chair. He reported an increase in back pain and some tingling in his left leg. A straight leg raising test was negative on both legs. Plaintiff was discharged with directions to take ibuprofen for pain relief. Tr. 116-17. Records show that Plaintiff was also prescribed, from time to time, more serious drugs such

as Flexoril, Vioxx and Percocet. A physician noted after a November 2002 clinic visit that the brace would be discontinued after the next visit. Tr. 111.

Dr. Edwin Simonton (since deceased) conducted a consultative examination in December 2002. Plaintiff indicated tenderness in the lower lumbar midline, but not at L2. Sensation in the lower extremities was normal and equal, and Plaintiff had a normal gait without limp or the need for assistive device. An x-ray showed that the fracture appeared to be healed.

Dr. Simonton wrote that he did not attempt a range of motion assessment and that "All attempts at manipulative examination including straight leg raising and Patrick test elicit complaints of pain." He also noted that Plaintiff removed his back brace for the examination, reapplied it to walk to his car, and then removed the brace and got in the car and rode away as a passenger. Dr. Simonton concluded: "This man has a healed fracture of his second lumbar vertebra. He has recovered sufficiently to no longer require a back brace. He may increase his activities and return to gainful employment at this time." Tr. 143-44.

Medical records indicate that LSU physicians did thereafter begin to wean Plaintiff from using his brace. Tr. 160. A nerve conduction study in April 2003 begins with a patient history. Plaintiff complained of numbness in the left upper thigh without weakness or other symptoms. He had normal strength in all muscles of both legs and no evidence of atrophy. The test results were completely normal. Tr. 155-56. A report of a clinic visit near that same

time reported that physical therapy seemed to be hurting more than helping, so the physicians recommended a pain management consultation. Tr. 154.

Plaintiff visited the Willis Knighton ER three times between March and September of 2003. He complained of back pain after lifting boxes, bending to pick up an object and a three-day flare up of pain. He was given pain medication at each visit. Tr. 161-69. Straight leg raise was reported negative at one visit (Tr. 164) and at another visit, though the second report said (perhaps inconsistently) that Plaintiff did exhibit pain in both legs at 45 degrees. Tr. 167. The handwriting on the third report is too poor to decipher reliably. Tr. 162-63.

Dr. Jeffery Faludi, an ophthalmologist who performs assessments for the state agency, reviewed the medical records and completed a residual functional capacity ("RFC") assessment form. He noted Plaintiff's claims (in his written application) that he could not stand for any period of time or walk more than 50 to 70 yards because of back pain. Based on Dr. Simonton's consultative examination, Dr. Faludi concluded that the fractured vertebra was healed, that Plaintiff should no longer need the back brace, and that Plaintiff should have no problems or limitations standing or walking. He concluded that Plaintiff could frequently lift 25 pounds and occasionally up to 50 pounds and that he could stand/walk and sit (with normal breaks) for totals of six hours in a work day. Tr. 145-53. That assessment suggests an RFC for medium work.

Plaintiff testified at the hearing that he was much more limited than suggested by the physicians. He said he could sit, walk or stand for no more than 10 or 15 minutes without

pain. He claimed to be unable to lift more than about five pounds, and then only if the object were lifted from a counter rather than the floor. Tr. 191. He reported that his physicians wanted to perform surgery, and he was on a waiting list to attend pain management. Tr. 188. Plaintiff reported to the Appeals Council that he underwent surgery in May 2004, but the Council found that information did not undermine the ALJ's decision, which addressed Plaintiff's condition on or before the date the ALJ's decision issued on December 18, 2003. Tr. 6.

**The ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (step one) and that he suffered from back pain secondary to a vertebra fracture, an impairment that is severe (step two) within the meaning of the regulations but not severe enough to meet or medically equal a listed impairment (step three). Plaintiff does not challenge those findings.

The ALJ then reviewed the medical evidence and testimony. He found Plaintiff's subjective complaints only partially credible because the degree of limitation alleged was not supported by the objective evidence, which evidence suggested pain that was relatively mild and controllable rather than disabling. Having recognized that Plaintiff did suffer some

limitations, the ALJ assessed an RFC for only light work, reduced by the ability to only occasionally climb, balance, stoop, kneel, crouch and crawl; and the need for a sit/stand option. That was a more favorable assessment than suggested by Dr. Faludi's report.

Vocational Expert ("VE") Joni Crayton testified that Plaintiff's past relevant work was at the medium to heavy exertional level, so the ALJ found that Plaintiff could not perform his past relevant work (step four). He then turned to step five and looked to whether there were other jobs existing in significant numbers in the economy that Plaintiff could perform, consistent with his RFC, age, education and work experience. The VE identified jobs such as cashier II, ticket seller and charge account clerk that could be performed. The ALJ looked to that testimony and Medical Vocational Rule 202.21 (as a framework) to conclude that there were jobs available and that Plaintiff was not disabled within the meaning of the regulations.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there

are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff's brief lists a single error for appellate review: The record does not support the residual functional capacity found by the Administrative Law Judge. The argument is based primarily on assertions that Dr. Simonton's consultative evaluation was flawed because Dr. Simonton disregarded the pain elicited during manipulative tests, erroneously attempted to perform the test without the back brace in place, and erroneously implied that Plaintiff was magnifying his symptoms because he took off the back brace after he left the doctor's office.

Plaintiff urges that the exhibition of pain during the tests, such as straight leg raising, should have yielded positive results that indicated a reduced RFC. The implication of Dr. Simonton's report is plain that he did not find credible Plaintiff's complaints of pain caused by any effort to engage in manipulative testing. The record would be more clear had Dr. Simonton directly said so in his report, but there is no doubt that he believed Plaintiff was exaggerating his claims of pain on any manipulation. There is no reasonable basis to believe that Dr. Simonton believed Plaintiff actually exhibited such a degree of pain as claimed but misunderstood how to interpret the pain as a positive test result.

Plaintiff points to a regulation in 20 C.F.R., Part 404, subpart P, Appendix 1, 1.00; J2 that indicates an examination should be with an orthotic device in place and include an evaluation of the person's maximum ability to function effectively with the device. Plaintiff

does not explain how testing without the brace harmed his case. If Plaintiff had been wearing the brace during the exam, he would have presumably been able to exhibit an even greater RFC than without it. The evidence also indicates that Plaintiff was at a point where his physicians were beginning to wean him from use of the brace. There is no reversible error in this respect.

Finally, Plaintiff complains that Dr. Simonton should not have inferred exaggeration of pain symptoms from the fact that Plaintiff removed his back brace for the ride away from the office. Dr. Simonton merely commented on those facts and did not state what inferences he drew from them, although it is likely that those facts along with the results of the examination and the other objective record evidence all combined to support Dr. Simonton's conclusion. Dr. Simonton's observation and any negative inference drawn therefrom, when considered in the context of the entire record, do not deprive the Commissioner's decision of substantial evidence. The Commissioner's decision is affirmed, and a judgment will be entered consistent with this ruling.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 27 day of February, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE